MICHELE BECKWITH
Acting United States Attorney
WHITNEE GOINS
SHEA J. KENNY
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>KYLE TRAVIS COLTON,<br><br>          Defendant. | CASE NO. 2:24-CR-00029 DAD<br><br>UNITED STATES' TRIAL BRIEF<br><br>DATE: July 15, 2025<br>TIME: 9:00 a.m.<br>COURT: Hon. Dale A. Drozd |

### I. INTRODUCTION

The Court will hear the jury trial in this case beginning on Tuesday, July 15, 2025 at 9:00 a.m. The trial is expected to last no more than two court days. The government has requested the appearance of two witnesses for its case-in-chief. The government plans to offer witness testimony and exhibits into evidence. Defendant Kyle Travis Colton ("Colton") is not in custody.

On February 15, 2024, a Grand Jury returned a one count Indictment, charging Colton with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). The Indictment also contains a criminal forfeiture allegation under 18 U.S.C. § 2253 for, among other things, any and all interest Colton has in devices upon which he stored child pornography.

On July 24, 2024, Colton filed a motion to suppress, seeking to suppress all evidence discovered pursuant to a search warrant that authorized the search of Colton's cell phone, residence, and electronic

1  devices, including his computer, based on lack of probable case.  ECF 26.  On April 10, 2025, the Court
2  denied Colton's motion to suppress in its entirety.  ECF 45.
3      On June 8, 2025, Colton filed a motion to dismiss the indictment based on the Presidential
4  pardon.  ECF 51.  On June 23, 2025, the Court denied Colton's motion to dismiss.  ECF 57.
5      This trial brief sets forth the elements of the receipt of child pornography offense; the case's
6  factual background; anticipated evidentiary issues; and other trial management issues.

## II.  FACTUAL BACKGROUND

Colton participated in the January 6, 2021 events at the U.S. Capitol building in Washington, D.C.[1]  As part of an investigation into those events, law enforcement obtained a search warrant to search Colton's person, residence and electronic devices.  At this time, Colton lived in a shared residence in Red Bluff, California, with his two brothers, one of his brother's then-girlfriends, and his 5-year-old nephew.  On December 15, 2023, the FBI executed the search.  During the execution of the search warrant, law enforcement located an HP TPN I108 laptop computer in Colton's bedroom on the floor next to his bed.  Law enforcement also located an Amazon package that had "Kyle Colton" written on it, a birthday card on the wall addressed to Colton, and Colton's vehicle registration in his bedroom.

A search of the computer revealed that Colton was the only local user of the computer, other than the built-in administrator and guest accounts.  Colton's account was password protected.  Colton's user account contained the following details:

> Username: Kyle
> Full Name: Kyle Colton
> Internet Username: relentless.kyle@gmail.com
> Profile Path: C:\Users\Kyle

On January 9, 2024, during the FBI's forensic examination of the computer, law enforcement located a file indicative of child sexual abuse material ("CSAM").  Indeed, the reviewer encountered over a dozen "thumbnail" images that indicated they were CSAM, including a file labeled "(pthc) NEW

---

[1] Colton was charged and pleaded guilty to charges related to his conduct at the U.S. Capitol building.  However, prior to sentencing, his case was dismissed pursuant to the President's January 20, 2025 Executive Order, which pardoned individuals who were charged with conduct related to the events at or near the United States Capitol on January 6, 2021.  Presidential Pardon, 90 Fed. Reg. 8331 (Jan. 20, 2025)

UNITED STATES' TRIAL BRIEF      2

1  2016 Pedo Childlover 8yo Daddy's Little Girl JM 01.mp4." The examiner stopped the search, and law
2  enforcement obtained a rollover warrant on January 10, 2024, authorizing the search of Colton's
3  computer for CSAM images.

4      A further forensic examination of Colton's computer by Special Agent Allison Boos revealed
5  over 2,500 CSAM images and videos. Agent Boos found numerous images that contained prepubescent
6  children engaged in sexually explicit activity with adults and other children. Many of the images were
7  downloaded using a Tor Browser[2], which allows encrypted searches for CSAM online. Agent Boos
8  used jumplist[3] data to determine when the CSAM files were last opened and viewed. Agent Boos also
9  determined that Colton used the VLC player application on his computer to view some of the images
10 and videos. Additionally, in the Tor Browser under the "SNES games" folder, there were three user-
11 created bookmarks created between July 2, 2022 through August 3, 2022 with titles indicative of
12 CSAM: "Pedo (0-10 years old) – NAUGHTY KIDS," "Asian American with 10 yo[4] Niece – NEW –
13 The Resistance," and "YATL: Yet Another Topic Links." Agent Boos also located Colton's resume on
14 the computer, and photographs of minor female children—non-suggestive of CSAM—sitting on
15 Colton's lap.

16     Agent Boos' examination determined that Colton had downloaded CSAM beginning no later
17 than July 2, 2022, and continuing through on or about no later than December 14, 2023 (the dates
18 charged in the Indictment). Indeed, the examination found evidence that Colton had been downloading
19 and possessing CSAM over a much longer period of time, dating back over a decade. *See* Government's
20 Motion *in Limine* No. 3, ECF 60.

21     Colton's two brothers and his brother's ex-girlfriend testified before the grand jury. All of them
22 testified, among other things, that they've never downloaded, viewed or accessed CSAM images or

---

[2] As Special Agent Boos will testify, the TOR browser is an anonymous network. *See United States v. Henderson*, 906 F.3d 1109, 1111 (9th Cir. 2018). A user must download and install the network software on his computer. TOR then allows the user to visit any website without revealing the IP address, geographic location, or other identifying information of the user's computer by using a network of relay computers. *Id.* TOR also allows users to access "hidden services," which are websites that are accessible only through the TOR network and are not accessible publicly. *Id.* at 1111-12.

[3] A jumplist is created automatically by the Windows operating system to assist users in re-opening items last viewed (or opened).

[4] "YO" stands for Years Old.

videos.

As a result of the CSAM videos and images downloaded on Colton's computer, Colton has been charged with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). ECF 1.

### III. ELEMENTS OF THE OFFENSE

In the sole count of the Indictment, Colton is charged with receipt of child pornography, beginning no later than on or about July 22, 2022, and continuing through on or about December 14, 2023 in violation of 18 U.S.C. § 2252(a)(2).

To prove the receipt of child pornography charge, the government must establish the following elements beyond a reasonable doubt[5]:

(1) between on or about July 2, 2022, and on or about December 14, 2023, the defendant knowingly received a visual depiction, with each juror agreeing as to which visual depiction he received[6];

(2) the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct;

(3) the visual depiction was of a minor engaging in sexually explicit conduct;

(4) the defendant knew that the visual depiction was of a minor engaging in sexually explicit conduct; and

(5) the visual depiction was received using any means or facility of interstate or foreign commerce.

#### A. Applicable Definitions

Many of the terms used in 18 U.S.C. § 2252(a)(2) are statutorily defined:

**1. Minor**

A minor is any person younger than eighteen years old. 18 U.S.C. § 2256(1).

---

[5] The Ninth Circuit does not have a model jury instruction for receipt of child pornography. However, the Sixth Circuit model jury instruction 16.05 has an instruction for receipt of child pornography, which tracks the statutory language. The parties have submitted a proposed jury instruction modeled on the Sixth Circuit model instruction. *See* ECF 62.

[6] The addition of this language is supported by the Ninth Circuit's Criminal Model Jury Instruction regarding Specific Issue Unanimity. 9TH CIR. CRIM. JURY INST. 6.27, comment (2022 ed., last updated Mar. 2023) (Specific Issue Unanimity). *See* ECF 62.

UNITED STATES' TRIAL BRIEF     4

### 2. Sexually Explicit Conduct

Sexually explicit conduct is actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A) (West 2018).

### 3. Lascivious Exhibition of the Genitals or Pubic Area

In determining whether a depiction includes lascivious exhibition of the genitals or pubic area, the trier of fact may consider the following list of non-exhaustive factors: (1) whether the focal point of the depiction is the child's genitals or pubic area; (2) whether the setting of the depiction is sexually suggestive, for instance, the setting is in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; (4) whether the child is fully clothed, partially clothed, or nude; (5) whether the depiction suggests sexual coyness or a willingness to engage in sexual activity; or (6) whether the depiction is intended or designed to elicit a sexual response from the viewer. *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987); *United States v. Overton*, 573 F.3d 679, 686-87 (9th Cir. 2009*); see also United States v. Hill*, 459 F.3d 966, 971-72 (9th Cir. 2006); *Johnson*, 639 F.3d at 439-40. A visual depiction need not involve all of these factors to be a lascivious exhibition, and it is for the trier of fact to decide the weight or lack of weight to be given to any of these factors. *See Dost*, 636 F. Supp. at 832; *see also Overton*, 567 F.3d at 686-87.

Additionally, whether a depiction is lewd or lascivious should be viewed from the perspective of the photographer or viewer, not from the perspective of the minor being photographed. "[A]pplied to the conduct of children, lasciviousness is not a characteristic of the child photographed, but of the exhibition which the photographer sets up for an audience that consists of himself and likeminded pedophiles." *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987); *see also United States v. Banks*, 556 F.3d 967, 980 (9th Cir. 2009) ("This focus results in a definition of lascivious that criminalizes images 'so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.'") (quoting *Hill*, 459 F.3d at 972); *Hillie*, 289 F. Supp. 3d at 200 ("An inference of lasciviousness based on the videographer's intent is particularly appropriate where the images are

captured in secret and without the victim's knowledge, because in such cases—especially situations involving minors—it is less likely the victim will be engaging in what is traditionally considered sexually explicit conduct."). An exhibition of the genitals or pubic area may encompass a visual depiction of a child's genital or pubic area even where those areas are covered by clothing. *See Dost*, 636 F. Supp. at 832; *United States v. Knox*, 32 F.3d 733, 746 n.10 (3d Cir. 1994) (finding that lasciviousness exhibition of the genitals does not require a nude display of the genitals nor does it "suggest a requirement that the contours of the genitals or pubic area be discernable or otherwise visible through the child subject's clothing"); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989).

### 4. Visual Depiction

Visual depictions include data stored on a computer disk or by an electronic means that is capable of conversion into a visual image. 18 U.S.C. § 2256(5); *see United States v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997).

### 5. Computer

A computer is an electronic magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions. The definition also includes any data storage facility or communications facility directly related to or operating in conjunction with such device. It does not include an automated typewriter, portable handheld calculator, or other similar device. 18 U.S.C. § 2256(6); *see* 18 U.S.C. § 1030(e)(1).

## IV.     ANTICIPATED EVIDENCE

### A. Primary Evidence

A search of Colton's residence revealed a large quantity of child pornography stored on his computer that was in his bedroom. However, the government narrowed the scope of the particular videos and images it will seek to admit at trial. The parties are working on a stipulation that the CSAM videos and images found on Colton's computer were visual depictions produced using minors engaged in sexually explicit conduct, among other things. *See* Exhibit S1. However, for the reasons stated in Section V.B of this trial brief, in addition to the stipulation, the government will seek to admit two screenshot photographs of the CSAM videos found on Colton's computer. The government will also elicit testimony from one of the FBI agents about the content of the videos/images, the location of the

UNITED STATES' TRIAL BRIEF                            6

videos/images, and the meaning of the download date and time associated with the videos/images.

Further, the mechanics of the downloads will be explained by Special Agent Allison Boos, in order to meet the government's burden of proving that the CSAM files were "received." *See United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) ("Received means "downloaded. . . . An individual who downloads material takes possession or accepts delivery of the visual image; he has therefore certainly received it.").

The government also plans to admit evidence to show that the laptop belonged to Colton. This will include testimony from one of the FBI agents who executed the residential search warrant at Colton's home, as well as photographs taken during the search of Colton's bedroom showing Colton's computer found on a pile of clothes on the floor of his bedroom, next to a package with Colton's address on it. The descriptions of each photograph are in the Government's Exhibit List. ECF 61. The parties also anticipate that Colton will stipulate that the computer belonged to him and was located in his bedroom.

### B.      **Witnesses**

A witness list has been concurrently filed with this brief. The government plans to call two witnesses in this case-in-chief: Special Agent Alexander Jernigan, Federal Bureau of Investigation, and Special Agent Allison Boos, Federal Bureau of Investigation. However, the government's investigation of the case and preparation for trial continues, and the government reserves the right to add witnesses should it become necessary.

Agent Jernigan will testify about the search of Colton's residence, including where Colton's computer was found and the indicia found in Colton's bedroom, including an Amazon package that had "Kyle Colton" written on it, a birthday card on the wall addressed to Colton, and Colton's vehicle registration. Agent Jernigan will also lay the foundation for the photographs of the items found in Colton's bedroom, including his computer.

Agent Boos will testify as a dual-role witness, providing both fact and expert opinion testimony.[7]

---

[7] The government has filed a motion *in limine* outlining the Ninth Circuit's proposed method for handling dual role witnesses as well as the findings which the Ninth Circuit requires the Court to make on the record regarding the witness' qualifications and reliability. *See* Government's Motion *in limine* No. 2, ECF 59.

Generally, Agent Boos will testify about the CSAM videos/images found on Colton's computer, attribution evidence found on Colton's computer, and the forensic examination of Colton's computer. Agent Boos will lay the foundation for the two CSAM photographs the government intends to admit into evidence. Agent Boos will also testify to the interstate commerce element, specifically that the images were downloaded, or received, using the internet, a means and instrumentality of interstate commerce.

## V.     EVIDENTIARY ISSUES

### A.     Dual-Role Testimony

The government plans to admit both fact and expert opinion testimony from Special Agent Allison Boos in its case-in-chief, otherwise known as dual-role testimony. The Ninth Circuit recommends the Court bifurcate dual-role testimony to separate percipient, or factual, testimony from expert opinion. *See United States v. Anchrum*, 590 F.3d 795, 803-04 (9th Cir. 2009) (holding that district court "avoided blurring the distinction between [the case agent's] distinct role as a lay witness and his role as an expert witness" when it "clearly separated [the agent's] testimony into a first 'phase' consisting of his percipient observations, and a second 'phase' consisting of his credentials in the field of drug trafficking and expert testimony regarding the modus operandi of drug traffickers"). Here, the government filed a motion *in limine* regarding the government's proposed procedure for Agent Boos' dual-role testimony. *See* ECF 59. The government proposes the separation of Agent Boos factual and expert opinion testimony in two separate phases, beginning with her expert testimony.

### 1.     Agent Boos' Expert Opinion Testimony

The government intends to elicit expert opinion testimony from Special Agent Allison Boos concerning the forensic examination of Colton's computer, including the extraction. As required by Rule 16, the government provided Colton with an expert witness notice for Agent Boos on June 18, 2025 and her curriculum vitae in discovery on March 26, 2025.

"Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." *Id.* at 1188 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). "This gatekeeping obligation 'applies to all (not just scientific) expert testimony.'" *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020) (quoting *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002)). Under

recent Ninth Circuit authority, the Court is required to make an explicit finding that the expert's testimony is "reliable," meaning that it has "a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188–90 (9th Cir. 2019) (internal quotation marks and citation omitted). "An implicit reliability finding is 'not sufficient.'" *Valencia-Lopez*, 971 F.3d. at 899 n.6 (quoting *Ruvalcaba-Garcia*, 923 F.3d at 1190). "Instead, to satisfy its gatekeeping duty under *Daubert*, the court must make an explicit reliability finding." *Id.* at 899 n.6 (internal quotation marks and citations omitted); see also *United States v. Irons*, 31 F.4th 702, 716 (9th Cir. 2022) (same).

"[D]istrict courts are vested with broad latitude to decide how to test an expert's reliability" because the "reliability analysis is a malleable one tied to the facts of each case." *Ruvalcaba-Garcia*, 923 F.3d at 1189 (internal quotation marks and citations omitted).

Here, in the Government's Motion in Limine No. 2 – Regarding Dual-Role Witness Testimony and Expert Testimony, the government outlined a proposed procedure for the Court to find Agent Boos' expert testimony reliable. *See* ECF 59. As described in the government's motion, the government will first lay the foundation for expert opinion by asking Agent Boos about her education, professional training, and law enforcement experience as it pertains to the forensic examination of a computer. Once this foundation is laid, the government will ask that Agent Boos be qualified as an expert, with the Court making the required findings on the record that Agent Boos' testimony has "a reliable basis in the knowledge and experience of the relevant discipline." *Ruvalcaba-Garcia*, 923 F.3d at 1188–90.

To assist the Court in making the required reliability findings, a summary of Agent Boos' testimony and curriculum vitae were attached to the Government's Motion *in Limine* No. 2. ECF 59. Generally, Agent Boos will provide expert testimony regarding the forensic examination of Colton's computer, the Tor Browser, and the relevance of Jump lists.

### 2. Agent Boos' Fact Testimony

Following Agent Boos' expert opinion testimony, the government will shift to Agent Boos' fact testimony. To make this bifurcation clear, prior to eliciting fact testimony, the government will state something to the effect of, "Agent Boos, we'd like to shift gears from discussing your education, professional training, and law enforcement experience, as it pertains to the forensic examination of a

computer and discuss the specific facts of this case." The government will then elicit Agent Boos testimony regarding what she found when performing her examination (*e.g.*, the CSAM, where it was located, and what it depicted).

The government also requests that the Court read the parties' Joint Proposed Jury Instruction No. 16 (Dual Role Testimony) before Agent Boos' testimony and at the end of the case.

### B.     The Parties' Stipulations Regarding Certain Evidence and Elements

The parties have agreed to stipulate to certain facts pertaining to the elements of the charged offense. Colton has indicated that he will stipulate to descriptions of a number of the CSAM files, that they are visual depictions produced using minors engaging in sexually explicit activity, that anyone looking at the images would have known they portrayed minors engaging in sexually explicit conduct and that were downloading child pornography, and that these visual depictions traveled in interstate commerce when they were downloaded. The stipulation will also include the file names and creation dates of the visual depictions, which would be read directly to the jurors during the trial. The parties are finalizing this stipulation and will file it as soon as it is ready.

Notwithstanding the stipulation, the government intends to admit two storyboards[8] displaying still photographs of "screenshots" of two of the charged CSAM videos. Defense has indicated it will not object to the government introducing these exhibits. These images depict children engaged in sexually explicit conduct with adults. "[T]he prosecution is entitled to prove its case by evidence of its own choice." *Old Chief*, 519 U.S. 172, 186 (1997). Indeed, it is "entitled to prove its case free from any defendant's option to stipulate the evidence away." *Id.* at 189. That rule "rests on good sense" because "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Id.* at 186. "The 'fair and legitimate weight' of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Id.* at 187.

Although Colton has indicated he will stipulate that the visual depictions are child pornography,

---

[8] The storyboards each contain five or six isolated still shots from the CSAM videos.

1 the content of these two still-image exhibits should still be admitted, as "courts are in near-uniform
2 agreement that the admission of child pornography images or videos is appropriate, even where the
3 defendant has stipulated, or offered to stipulate, that those images or videos contained child
4 pornography." *United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012) (citing *United States v.*
5 *Ganoe*, 538 F.3d 1117, 1123-24 (9th Cir. 2008); *United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir.
6 2009); *United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008); *United States v. Morales-*
7 *Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008); *United States v. Sewell*, 457 F.3d 841, 844 (8th Cir.
8 2006); *United States v. Dodds*, 347 F.3d 893, 898-99 (11th Cir. 2003). Further, the court "is not
9 required to scrub the trial clean of all evidence that may have an emotional impact.' " *Ganoe,* 538 F.3d
10 at 1124 (citation and internal quotation marks omitted).

11      The photographic evidence is undoubtedly relevant, and it should not be excluded under Rule
12 403. Exclusion of relevant evidence under Rule 403 should be "cautious and sparing," because its
13 "major function is limited to excluding matters of scant or cumulative probative force, dragged in by the
14 heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir.
15 2000). The rule prevents admission only if the danger of unfair prejudice substantially outweighs the
16 probative value. The government does not deny the emotional impact of the still photographs in this
17 case. It is for this reason that the government seeks to admit the two storyboards with still images,
18 rather than the entirety of the videos themselves. This will allow the government to prove its case with
19 evidence of its own choice, while still protecting the jury from having to view the full content of all the
20 charged videos and images. Moreover, the Ninth Circuit has endorsed a procedure showing the jury ten
21 clips of CSAM or less, that were each less than one minute. *See Ganoe*, 538 F.3d at 1123-4.

22      Excluding the two still photographs and solely substituting a stipulation that the images are child
23 pornography prevents the jury from learning the nature of the depictions found on Colton's computer.
24 Evidence of the nature of the CSAM videos is of high evidentiary value for the government to prove that
25 he knew the images were of children engaged in sexually explicit conduct, and that the images *actually*
26 depicted children engaged in sexually explicit conduct, which are essential elements of the crime
27 charged in the indictment. (emphasis added). As mentioned above, the defense is not objecting to the
28 government admitting these two exhibits.

UNITED STATES' TRIAL BRIEF                            11

### C. Proposed Procedure for Handling CSAM images

As mentioned above, the government intends to admit two storyboards containing still photographs of the CSAM found on Colton's computer. On June 10, 2025, defense counsel viewed the CSAM images and associated file names with government counsel and Special Agent Allison Boos. Given the sensitive nature of the images, the government proposes the following procedure to publish these exhibits for the jurors. The government plans to lay the foundation of the images through the testimony of Agent Boos. The two exhibits will be in red binders for the jurors, the Court, the witness, and the defense. For the jury, the binders will be placed on the floor underneath each juror seat. After the photographs are admitted into evidence, the government will ask the Court to inform the jurors that they may open the red binders underneath their seats. After the jurors have had a reasonable opportunity to view the images, each juror will place the binder back underneath their seat and the government will continue to proceed with their case-in-chief. This proposed procedure will allow the jurors to open and close their red binder as they see fit for a limited time period.

### D. Computer Files in General

This case involves a substantial amount of digital evidence recovered from Colton's computer. The standard for authenticating computer records is the same for authenticating other records and does not vary simply because the original record happened to be in electronic form. *United States v. Vela*, 673 F.2d 86, 90 (5th Cir. 1982) (confirming that "computer evidence is not intrinsically unreliable" and upholding the admission of computer-generated telephone company records). The witness who testifies to the authenticity of the computer record need not have special qualifications and need not have programmed the computer or even understand the technical operation of a computer. *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985) ("It is not necessary that the computer programmer testify in order to authenticate the computer-generated records.") (citation omitted). Instead, the witness need only have first-hand knowledge of the facts to which he testifies, such as examining or seizing the computer from which the records were obtained. *United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997). The authenticity of a computer program is also generally not a bar to the admission of evidence derived from the use of such program. Such challenge is defeated by providing sufficient facts to support a finding that the records are trustworthy and the opposing party has the chance to inquire into

the accuracy of such records. *United States v. Briscoe*, 896 F.2d 1476 1494-1495 (7th Cir. 1990). Typically, the reliability of a computer program can be established by showing that the users of the program rely upon it on a regular basis. *Id.* at 1494 (holding that computerized records held by a telephone company were admissible).

In this case, Special Agent Boos, a trained computer forensic analyst, will testify that a computer forensic software, known as Axiom, was used to retrieve the data found on Colton's computer. The software is well-known and a generally-accepted means of conducting a forensic examination of a computer. The government does not anticipate an objection to the use of the forensic software in this investigation based on communications with defense counsel as well as because many defense experts rely upon the same program.

Additionally, the government may show the jury various items of evidence found on Colton's computer including, but not limited to, images of child pornography. On June 10, 2025, defense counsel reviewed the CSAM images with government counsel and Agent Boos.

### E. Summary Charts

The government anticipates that Special Agent Allison Boos may use summary exhibits during her testimony. These summaries will show summary evidence of child sex abuse images and videos Colton obtained from the Internet. Given the number of videos and associated data, the government respectfully submits that summaries are appropriately admitted into evidence. *See* Fed. R. Evid. 1006; *United States v. Meyers*, 847 F.2d 1408, 1411-1412 (9th Cir. 1988). In particular, FRE 1006 provides that "the content of voluminous writings, recordings or photographs which cannot be conveniently examined in court" may be presented in the form of a "summary, chart or calculation." FRE 1006. The Ninth Circuit has recognized that summary evidence "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989); *see also Meyers*, 847 F.2d at 1412 (approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation). Each of the aforementioned charts will be produced to counsel for the defendant in advance of trial, with the understanding that revisions may be made during trial, which will be disclosed as soon thereafter to counsel as possible.

UNITED STATES' TRIAL BRIEF   13

### F. Rule 414/404(b) Evidence

Based on the defense team's representation that they will not be putting on a defense or contesting the majority of the elements, the government does not, at this time, anticipate seeking to admit 414/404(b) evidence of Colton's other sexual misconduct. However, should the defense change strategies prior to or during trial, and seek to contest Colton's knowledge or intent, the government will seek to admit such evidence for the purposes allowed by rules 414 and 404(b). The government has filed a detailed motion *in limine* regarding the admission of evidence of Colton's other sexual misconduct, should this become necessary. *See* ECF 60.

As described in the government's motion *in limine*, Federal Rule of Evidence 414(a) provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed *any other* child molestation. The evidence may be considered on any matter to which it is relevant." (emphasis added.) As defined, Rule 414's reference to "child molestation" broadly includes the receipt of child pornography. "Child molestation" is defined by Rule 414(d)(2)(B) to mean any crime under federal or state law involving "any conduct prohibited by 18 U.S.C. chapter 110," which embraces the knowing receipt, by computer, of "any visual depiction" involving "a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(2); *see also United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006). Thus, Rule 414 "create[d] an exception to the general ban on propensity evidence contained in Rule 404(b)." *Seymour*, 468 F.3d at 384–85. Relevant evidence of a defendant's prior child molestation is admissible under Rule 414 unless "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020).

Additionally, other acts of sexual conduct may be admitted for more limited purposes specified in Rule 404(b), including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) is an 'inclusionary rule,' under which evidence is inadmissible 'only when it proves nothing but the defendant's criminal propensities.'" *United States v. Hadley*, 918 F.2d 848, 850 (9th Cir. 1990) (citation omitted).

"[E]vidence is admissible under Rule 404(b) if: (1) sufficient proof exists for the jury to find that the defendant committed the [other] act; (2) the [other] act was not too remote in time; and (3) the [other] act is introduced to prove a material issue in the case." *Id.* at 850-51.

Here, the investigation of Colton revealed that he sought out, downloaded, possessed and deleted CSAM images for over a decade. Should Colton ultimately contest that he did not knowingly or intentionally download or receive child pornography, the government would seek to offer evidence of Colton's other child molestation offense conduct that occurred between 2010 and 2023. *See* ECF 60.

### G.     Testimony Regarding a Person's Age

The government may elicit testimony from Special Agent Allison Boos concerning the apparent age of the children depicted in images and videos of child pornography found on Colton's computer. The witness' lay opinion testimony concerning the ages of the children depicted is admissible under Federal Rule of Evidence 701, which "permits a lay witness to give opinion testimony as long as the opinion is '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" *United States v. Yazzie*, 976 F.2d 1252, 1255 (9th Cir. 1992) (quoting Fed. R. Evid. 701)

The Ninth Circuit is clear that expert testimony is not required to prove the age of children in child pornography cases. *See United States v. Salcido*, 506 F.3d 729, 733-34 (9th Cir. 2007) ("We agree with every other circuit that has ruled on the issue that expert testimony is not required for the government to establish that the images depicted an actual minor. With respect to the quantum of evidence necessary to support a conviction, there seems to be general agreement among the circuits that pornographic images themselves are sufficient to prove the depiction of actual minors."); *see also United States v. Irving,* 452 F.3d 110, 121–22 (2d Cir. 2006) (rejecting claim that the government must present extrinsic evidence to prove the reality of children in video images); *United States v. Slanina,* 359 F.3d 356, 357 (5th Cir. 2004) (per curiam) (holding extrinsic evidence was not required to prove reality of children in images); *United States v. Kimler,* 335 F.3d 1132, 1142 (10th Cir. 2003) ("Juries are still capable of distinguishing between real and virtual images...."); *United States v. Deaton,* 328 F.3d 454, 455 (8th Cir. 2003) (upholding jury determination that images depicted real children even where no additional evidence was presented on the issue).

Therefore, it is proper for Agent Boos to testify about the apparent ages of the children depicted in the child pornography images and videos found on Colton's computer.

### H. Exclusion of Witnesses from the Courtroom and Designation of Case Agent

Pursuant to Federal Rule of Evidence 615, on the morning of trial, the government will move to exclude all witnesses from the courtroom until their testimony has been completed. The government will further move that Special Agent Allison Boos be designated as the case agent and exempt from the exclusion order. Fed. R. Evid. 615; *see also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1985).

Rule 615 provides that, upon request by a party, the Court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. Rule 615 alters prior practice by removing the matter from the trial judge's discretion and making it a matter of right, at the request of a party. Advisory Committee Note to Rule 615. Exceptions to the rule of exclusion are provided for: (1) a party who is a natural person; (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney; or (3) a person whose presence a party shows to be essential to presenting the party's claim or defense (such as a mental health expert); or (4) a person authorized by statute to be present.

### I. Reciprocal Discovery

The government has provided Colton with all required discovery in its possession or made it available for inspection. Under Rule 16 of the Federal Rules of Criminal Procedure, a defendant must disclose to the government all documents, objects, reports of examinations and tests, and written summary of any expert witness, that the defendant has within the defendant's possession, custody, or control and that the defendant intends to use in the defendant's case-in-chief at trial. Fed. R. Crim. P. 16(b). The government has received no reciprocal discovery to date.

Should Colton seek to introduce any evidence that was not provided to the government prior to trial, and that should have been provided as reciprocal discovery, the government respectfully requests that the Court exclude such evidence, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

///

///

### J. Defense Witness Statements

The government informs the Court and Colton that should Colton call any witnesses (other than himself) the government will request all witness statements to which it is entitled under Federal Rule of Criminal Procedure 26.2 that are in the possession, custody, or control of Colton or his attorney and that relate to the subject matter of the witness's testimony. Colton's failure to promptly collect and produce these materials to the government may result in unnecessary trial delays and/or unfairly prejudice the government.

## VI. FORFEITURE ALLEGATION

The government also seeks to forfeit any and all interest Colton has his device upon which he stored child pornography. The government seeks the forfeiture on the theory that the defendant used this device to commit or to facilitate the commission of the crime alleged in the indictment, which is a HP TPN I108 laptop computer, serial number: 5CG32530XY.

Here, the trial is to a jury, therefore, the "court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." Fed. R. Crim. P. 32.2(b)(5). The Ninth Circuit has held that Rule 32.2(b)(5) places an "affirmative duty on the court" to determine whether either the United States or defendant requests a jury determination regarding forfeiture. *Mancuso*, 718 F.3d 780, 799 (9th Cir. 2013). The inquiry must occur "before the jury retires." *Id.*

The government is exploring the possibility of a stipulation with the defense to proceed by bench trial in the forfeiture phase.

## VII. CONCLUSION

The foregoing is a summary of points the government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit further briefing as may be necessary.

Dated: July 3, 2025

MICHELLE BECKWITH
Acting United States Attorney

/s/ WHITNEE GOINS & /s/ SHEA J. KENNY
WHITNEE GOINS
SHEA J. KENNY
Assistant United States Attorneys

UNITED STATES' TRIAL BRIEF                                    17